Robert I. RIDENOUR,
Plaintiff-Appellee,

v.

The LAWSON COMPANY, a Consolidat-
ed Foods Company,
Defendant-Appellant.

No. 84–3962.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1985.

Decided May 21, 1986.

Michael T. McMenamin, Lead Counsel (argued), Christopher L. Gibbon, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for defendant-appellant.

George B. Vasko (argued), Akron, Ohio, for plaintiff-appellee.

Before: KEITH and KRUPANSKY, Circuit Judges; and JOINER, Senior District Judge.[*]

KRUPANSKY, Circuit Judge.

Defendant-appellant The Lawson Company ("Lawsons") appealed from a jury ver-

[*] The Hon. Charles W. Joiner, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

dict in favor of plaintiff-appellee Robert I. Ridenour ("Ridenour") in an employment discrimination action initiated pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1985).

In 1974, Lawsons employed plaintiff as its Southern Region Security Manager. At that time, Ridenour was 45 years old. Plaintiff had previously served as Assistant Security Director for the Elder Beerman Department Stores. While employed as Elder Beerman's Assistant Security Director, plaintiff had also worked as a part time uniformed patrolman with the Sugar Creek Police Department.

On August 7, 1979, Lawsons promoted Ridenour to Director of its Security Department. At the time of his promotion, plaintiff was 50 years old. The Security Department was principally charged with curtailing employee theft. In implementing the objectives of the security program, a majority of Security Department's employees were assigned to surreptitious store surveillance. As Director of Security, Ridenour allotted ninety percent of his time to personnel surveillance with five percent of his time allocated to warehouse, plant and office security and the remaining five percent assigned to crime prevention.

During the 1981 fiscal year, Lawsons experienced financial difficulties reflected by a 71% decline of profits. In February of 1981, the company was also confronted with a safety crisis prompted by the murder of an employee in its Kent, Ohio store. The murder resulted in meetings with store managers and clerks which gave Lawsons the opportunity to respond to employee concerns.

At the meetings, several employees expressed dissatisfaction with Lawsons' employee and store security program. Thereafter, Lawsons retained the Athena Research Corporation to conduct a survey and prepare recommendations to promote an aggressive plan directed toward external crime prevention. Based on Athena's report and recommendations, Lawsons initiated a modernized crime prevention program to be staffed by a highly experienced director with specific training in the specialized field of crime prevention. The annual salary of the new director was to be in excess of $40,000 as compared to the annual salary of $24,800 assigned to Ridenour's job classification as Director of Security. A search for the Director of the new Crime and Loss Prevention Department immediately ensued.

Plaintiff was the first individual considered for the Director's position because of Lawsons' policy to initially prefer its own employees for newly created positions. Plaintiff's background and experience were compared against the established criteria for the Director's position. Lawsons determined that plaintiff was not qualified for the promotion because he lacked experience in the specialized area of crime prevention. Lawsons advised him of its decision.

At least 20 candidates were considered for the director's position. Lawsons initially offered the position to Joseph Parker, an individual in his early 50's. Parker's experience included FBI training and service with Cook United in crime prevention. Parker declined the position because of inadequate salary considerations.

Lawsons hired Rolland Trayte. Trayte had extensive formal training in crime prevention and intensive work experience with the State of Ohio in developing and implementing crime prevention programs. Trayte had written several training manuals and conducted numerous training seminars in the area of crime prevention. He was 29 years old.

During the period between May and September, 1981, the Security Department continued to be responsible for internal employee theft while the new Crime and Loss Prevention Department focused exclusively on external crime prevention. In September, 1981, the responsibility for controlling internal employee theft was transferred to the Store Operations Department and the Security Department was eliminated.

Plaintiff was discharged on October 19, 1981. He was 52 at the time. The only subordinate Crime and Loss Prevention po-

sition that had not been staffed before plaintiff's termination was a regional loss specialist position that would have required a substantial reduction in plaintiff's annual salary from $24,800 to an annual salary of less than $20,000 and relocation from Akron to Toledo, Ohio.

Plaintiff filed this action on November 3, 1982, alleging that Lawsons terminated his employment because of age. Plaintiff's complaint requested back pay, reinstatement, attorney's fees and costs.

At the close of plaintiff's evidence, Lawsons moved to dismiss the plaintiff's complaint for failure to present a prima facie case. The motion was denied by the court. Lawsons thereupon presented its business reasons for its decision not to promote Ridenour to the Director's position in May of 1981 and its decision not to demote Ridenour to a subordinate position in October of 1981.

Plaintiff presented no rebuttal evidence. At the conclusion of all of the evidence, Lawsons moved for a directed verdict which was denied by the court and the case was submitted to the jury for a decision.

The jury returned a verdict of one hundred twenty-five thousand dollars ($125,-000.00), ordered reinstatement of plaintiff to his former position and awarded attorneys' fees in the amount of fifteen thousand seventy-one dollars ($15,071.00). A final judgment was entered reflecting the jury verdict. Lawsons filed a timely motion for judgment n.o.v. and, in the alternative, motion for new trial, which motions were denied on November 5, 1984. Lawsons thereupon filed this timely appeal on November 27, 1984.

The Age Discrimination in Employment Act makes unlawful the discharge of an employee because of his age. 29 U.S.C. § 623(a)(1) (1985). Lawsons argues that Ridenour failed to carry his ultimate burden of proving that he was a victim of age discrimination and hence, the district court

erred in denying Lawsons' motion for judgment n.o.v.

A judgment n.o.v. may be granted only if, upon viewing the totality of the admissible evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion. *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983). An appellate court reviewing the motion must apply the same standard of review as the district court. Thus, the judgment below can be reversed only if, after viewing all of the evidence and drawing all reasonable inferences in favor of the plaintiff, this court concludes that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion." *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

In *Blackwell v. Sun Electric Co.*, 696 F.2d 1176, 1180 (6th Cir.1983), this court noted that the burden of proof in an ADEA case should be allocated in accordance with the Supreme Court's decision in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *Burdine* decision delineated the burden of proof in discrimination cases into three stages.

Initially, the burden is upon the plaintiff to present a prima facie case by introducing evidence that he was adversely affected by the defendant's employment decisions "under circumstances which give rise to an inference of unlawful discrimination." 450 U.S. at 253, 101 S.Ct. at 1094. The term "prima facie case", as applied in ADEA cases, "means only that the plaintiff has produced enough evidence to shift the burden of production to the defendant." *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983), *citing Burdine*, 450 U.S. at 250, n. 7, 101 S.Ct. at 1094, n. 7.[1]

---

1. In *Burdine* the court stated:
    The phrase "prima facie case" may denote not only the establishment of a legally manda-

tory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit

■ Thus, the prima facie case presented by the plaintiff creates a mandatory rebuttable presumption of actionable discrimination in favor of the plaintiff, thereby shifting the burden of production to the defendant to rebut the presumption of discrimination with evidence that the defendant's acts were the result of a "legitimate, non-discriminatory reason." 450 U.S. at 254, 101 S.Ct. at 1094. If the defendant's efforts are successful, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff must thereupon be accorded an opportunity to demonstrate that the defendant's proffered reasons for its actions were pretextual. Recognizing that the burden of persuasion rests upon the plaintiff throughout the proceedings, the *Burdine* court noted:

> The plaintiff retains the burden of persuasion. She must now have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973). A plaintiff may carry the burden of demonstrating that an employer's proffered reasons for discharge were pretextual "by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge." *La Montagne*

*v. American Convenience Products, Inc.,* 750 F.2d 1405, 1414–15 (7th Cir.1984).

In determining whether the defendant's proffered legitimate, non-discriminatory reasons for its actions were pretextual, the trier of fact may rely on the evidence introduced to establish the prima facie case and any inferences properly drawn therefrom. As the Supreme Court noted in *Burdine,* "there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." 450 U.S. 255 n. 10, 101 S.Ct. 1095 n. 10. In the case at bar, Ridenour presented no rebuttal evidence after Lawsons introduced evidence of its legitimate, nondiscriminatory reasons for the plaintiff's termination. Accordingly, the court must determine whether the evidence presented in Ridenour's case in chief, when combined with plaintiff's cross-examination of Lawsons' witnesses, was sufficient to create a jury submissible issue of pretext.

Ridenour charges that Lawsons' decision in May of 1981 not to promote him and its subsequent decision in October of 1981 to terminate his employment were age related and constituted discrimination. Lawsons posits that it proved legitimate, non-discriminatory reasons for not promoting Ridenour to the position of Director of Crime and Loss Prevention by demonstrating his lack of experience and the superior qualifications of Trayte, the individual ultimately employed as the Director of the newly created Department. The record supports Lawsons' argument.

Lawsons also urges that its decision to terminate the plaintiff in October of 1981 resulted from purely economic reasons which prompted a general reduction of its work force and its long standing uniformly applied policy of not demoting executives to subordinate positions. Lawsons' previous experience disclosed that demoted employees could not adjust to their positions of lesser authority and responsibility.

---

the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it ap-

parent that in the Title VII context we use "prima facie case" in the former sense. 450 U.S. at 250, n. 7, 101 S.Ct. at 1094, n. 7.

■ Generally an ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons. To meet his ultimate burden of demonstrating that he was a victim of age discrimination, the plaintiff, in addition to proving that he fell within the protected class, that he was terminated and that he was replaced by a younger individual, must come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination. *See, e.g., LaGrant v. Gulf & Western Manufacturing Co., Inc.,* 748 F.2d 1087 (6th Cir.1984).[2]

Lawsons supported its position that the plaintiff was terminated for purely economic reasons prompted by a reduction of its work force by the testimony of Dr. John Burke of Cleveland State University, a recognized expert in economics and statistics. Burke analyzed data concerning the effects of the 1981 reduction in force upon executive and administrative employees who were exempted from the wage and hour provisions contained in the Fair Labor Standards Act (FLSA). Burke's statistics demonstrated that the layoffs resulted in an increase of the average age of Lawsons' FLSA exempt employees from 41.28 to 41.72, not a decrease as would be expected if age discrimination were a factor. Thus, the unrebutted statistical evidence refutes any inference of discriminatory animus on behalf of Lawsons.

■ Ridenour's argument that he should have been offered one of the subordinate positions in the Crime and Loss Prevention Department despite the general reduction in Lawsons' work force is equally without merit. Where an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company. *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980).

The Second Circuit's decision in *Parcinski v. The Outlet Co.,* 673 F.2d 34 (2d Cir.1982), is directly on point. Considering a similar argument, the court stated at 37:

Assuming that there were lower echelon, poorer paying jobs in the restructured enterprise which buyers were qualified to fill, Outlet would be met with serious morale problems arising out of the substantial reductions in responsibilities and salaries that would accompany such moves. These were matters of concern for Outlet, not pretextual arguments. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

Lawsons' uniformly applied policy of not demoting executives to subordinate positions was a legitimate, non-discriminatory reason for refusing to offer Ridenour a subordinate position in the Crime and Loss Prevention Department.

■ Because plaintiff presented no probative evidence of pretext either through affirmative testimony, cross-examination of defense witnesses or rebuttal which would discredit or outweigh defendant's legitimate, nondiscriminatory reasons supporting both the company's refusal to promote plaintiff to the director's position and the company's decision to discharge plaintiff, the defendant's motion for judgment n.o.v. should have been granted. The evidence presented to the jury, even when viewed in the light most favorable to plaintiff, points so strongly in favor of the defendant that

**2.** Because this court concludes that plaintiff did not carry his burden of producing evidence of pretext as to both of his charges, it is not necessary to consider whether Ridenour carried his initial burden of presenting a prima facie case as concerns his discharge, which, according to the Company, resulted from a general reduction of its work force because of an economic crisis.

In *LaGrant, supra,* this court noted that "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." *See also Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1118 (6th Cir.1980).

58

reasonable minds could not conclude that Lawsons' actions were motivated by age discrimination.

For the reasons stated above, the judgment of the district court is hereby REVERSED.

KEITH, Circuit Judge, dissenting.

The majority correctly notes the applicable standard for reversal; the judgment below can be reversed only if, after viewing all of the evidence and drawing all reasonable inferences in favor of the plaintiff, this court concludes that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion." *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–05 (6th Cir. 1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). The majority supports its decision based mainly upon the statistical evidence introduced by Dr. John Burke, indicating no age discrimination. The jury had ample opportunity to consider Dr. Burke's evidence in the instant case. I find no reason to second guess the jury.

Significantly, plaintiff was evaluated by Ed Kenney when plaintiff was Southern Region Security Manager and Neil Gray, when plaintiff was Director of Security; both gave plaintiff excellent ratings. Furthermore, plaintiff was never asked to interview for the new position of Director of Crime and Loss Prevention, and he was never asked to submit a resume for the position. Accordingly, the evidence indicates that "reasonable minds" could find for the plaintiff.

This court in *Blackwell v. Sun Electric*, 696 F.2d 1176 (6th Cir.1983) held that an ADEA claimant can prevail if he shows that the factor of age *made a difference* in determining a hiring decision. The court implicitly rejected a more restrictive "but for" test for ADEA claimants. In light of this test, the jury had sufficient evidence to find for the plaintiff. Accordingly, I would affirm.