62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward L. SIMON, Plaintiff-Appellee,
v.
NuTONE, INC., Defendant-Appellant.
 No. 94-3303.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant NuTone Inc. ("NuTone") appeals the judgment in favor of Plaintiff Edward L. Simon in this age discrimination action brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-34 (1988 & Supp. V 1993), and state law, Ohio Rev.Code Ann. Sec. 4101.17 (Anderson 1989). On appeal, this court must determine whether NuTone was entitled to judgment as a matter of law or, in the alternative, a new trial. We have reviewed the trial record and considered the arguments of both sides on appeal, and we have concluded that the district court erred in denying NuTone's motion for judgment as a matter of law. Therefore, for the reasons stated below, we reverse the jury's verdict.
 
 I.
 
 2
 NuTone manufactures built-in products, such as residential burglar alarms, for houses. Simon was employed at NuTone's Cincinnati, Ohio, facility from 1973 until July 1991, when, at age 64, he was terminated during a reduction of NuTone's work force. From 1987 until the time of his termination, Simon worked in NuTone's Marketing Department. Initially, Simon's sole function in the Marketing Department was to provide technical support for a NuTone product line called NuTech. When the NuTech line was discontinued in late 1989, however, Simon's duties quickly diminished. A matter of dispute at trial and on appeal is whether Simon was assigned the duties of a "Product Manager" for various other NuTone products. Nutone argues that after the discontinuation of NuTech, Simon assisted other product managers, but that the managers retained full responsibilities over their product lines; Simon, on the other hand, argues that although he lacked the title, his duties were the same as a product manager (i.e., he managed the production of radios, intercoms, security systems, and a number of other NuTone products). At trial, NuTone offered several reasons for Simon's termination. Robert Hoffman was Simon's supervisor in the Marketing Department, and he testified that Simon's communication skills were below average and that this contributed to his termination. Moreover, it was undisputed that from 1986 until the time of Simon's lay-off, NuTone's business suffered as a result of the depressed housing market. As a result, NuTone was forced to restructure and reduce its work force. The reductions included terminations in the National Service Department and the Marketing Department.
 
 
 3
 The evidence presented at trial also established that Hoffman, who was in charge of selecting the employees for lay-offs, selected Simon, the oldest Marketing employee, as the only Marketing employee to be terminated. Of the six National Service employees Hoffman selected to be terminated, Simon claims that Hoffman selected the four oldest. Thus, of the seven total lay-offs, Simon alleges that Hoffman selected NuTone's five oldest and two others. Simon, however, failed to establish the ages of five of the fifteen employees under Hoffman's supervision.[2]
 
 
 4
 Following a jury trial, the jury found that Simon's discharge violated the ADEA and was wilful. The jury, however, ruled in favor of NuTone with respect to Simon's failure to rehire claim. Finally, the jury found that NuTone had violated section 4101.17 of the Ohio Revised Code, which prohibits discharge based on age. The jury awarded Simon $50,000 for the ADEA violation and $28,000 for the Ohio law violation. Moreover, the jury found that NuTone acted with reckless disregard of ADEA, 29 U.S.C. Secs. 621, 626(b), and was therefore willful in its violation. Accordingly, the jury doubled the $50,000 award to $100,000. Thus, NuTone was ordered to pay Simon $128,000 in total damages.
 
 
 5
 NuTone timely filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial. The lower court denied NuTone's motion with respect to liability under the ADEA, but granted the motion with respect to wilfulness under the ADEA and deducted $50,000 from the damages award. The lower court also ruled that it did not have pendant jurisdiction over the state claim and dismissed it.[3] Accordingly, the court vacated the $28,000 award for the state law violation, thus reducing the overall award to $50,000. Finally, the lower court denied NuTone's motion for a new trial. NuTone timely filed a notice of appeal.
 
 II.
 
 6
 NuTone claims that Simon presented insufficient evidence to support the verdict in his favor, and that it was therefore entitled to judgment as a matter of law.[4] This court applies the same standard in reviewing decisions on motions for judgment as a matter of law as the district court applies in deciding these motions. Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991). The inquiry to be made on these motions is as follows:
 
 
 7
 [T]he district court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury.... As applied in this context, "sufficient evidence" will be found unless, when viewed in the light of those inferences most favorable to the non-movant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ.
 
 
 8
 Id. Thus, the court should not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. Rather it must view the evidence in a light must favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. See Agristor Leasing v. A.O. Smith Harvestore Prods., Inc., 869 F.2d 264, 268 (6th Cir.1989).
 
 
 9
 In Barnes v. Gencorp Inc., 896 F.2d 1457 (6th Cir.), cert. denied, 498 U.S. 878 (1990), we discussed the analytical framework for examining intentional discrimination claims.
 
 
 10
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 11
 Id. at 1464 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted)); see generally McDonnell Douglass v. Green, 411 U.S. 792 (1973); Manzer v. Diamond Shamrock Chemicals Co. 29 F.3d 1078 (6th Cir.1994). This is the appropriate "analytical method of examining every intentional discrimination claim, whether it proceeds through an indirect method of proof or through direct, circumstantial, or statistical evidence." Barnes, 896 F.2d at 1464.
 
 III.
 
 12
 We reverse the judgments and damages award because we find that NuTone articulated a legitimate, non-discriminatory reason for Simon's termination which Simon failed to rebut by a preponderance of the evidence. See Barnes, 896 F.2d at 1464.[5] Where, as here, workforce reduction is involved, " 'the most common legitimate reasons' for the discharge are the work force reductions." Id. at 1465 (quotation marks omitted). Here, NuTone has, indeed, cited the reduction in work force, as well as Simon's expendability in light of the termination of the NuTech product line, as reasons for Simon's discharge.
 
 
 13
 Once an employer in an ADEA action asserts a legitimate non-discriminatory reason for the employee's discharge, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason given was a pretext for discrimination. See id.; Simpson v. Midland-Ross Corp. 823 F.2d 937, 942 (6th Cir.1987) (noting that employee alleging intentional discrimination in employment based on age must prove ultimate issue by preponderance of evidence). This court has identified three ways in which a plaintiff can establish that defendant's reasons for laying off the plaintiff were not credible: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not actual factors motivating the discharge, or (3) if they were factors, by showing that they were jointly insufficient to motivate the discharge." Chappell v. GTE Prods. Corp., 803 F.2d 261, 266 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987); see also Manzer, 29 F.3d at 1082-83.
 
 
 14
 Simon's indirect, statistical, and pattern evidence could not have led a reasonable juror to conclude that workforce reduction and the cancellation of NuTech were a pretext for age discrimination. Simon has not demonstrated that NuTone required his services once NuTech was discontinued. Simon and Hoffman both testified that Simon was subject to termination during NuTone's 1987 workforce reduction, but that he was retained and transferred to the Marketing Department solely for the purpose of working on the NuTech product line. J.A. at 249-250. Simon further testified that he was the only employee in the Marketing Department who worked exclusively on the NuTech product line and that other Marketing Department employees, including Boehm, were assigned to other products. J.A. at 250, 388. After the elimination of NuTech in 1990, Simon remained responsible for NuTech's remaining matters, and he worked along side other product managers in the Marketing Department on various other projects. In 1991, Hoffman was directed to choose one employee in the Marketing Department for termination as a result of the workforce reduction. Hoffman testified at trial, and NuTone argues on appeal, that Hoffman selected Simon because the reason he was brought into the Marketing Department in the first instance no longer existed, thereby making him more expendable than the product managers who continued to have specific products for which they were responsible.
 
 
 15
 While conceding that Hoffman was required to eliminate one employee from the Marketing Department, Simon argues he was selected because of his age, not because of the discontinuation of NuTech. "Often, plaintiffs have a difficult task in meeting their burden of persuasion in ADEA cases, although they have only to show that age was 'a,' and not 'the,' determining factor in the employer's personnel decision." Chappell, 803 F.2d at 266. "[A]n ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee" who is terminated under different circumstances. Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986). An ADEA plaintiff can carry his burden of proving that workforce reduction was a pretext through the presentation of "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes, 865 F.2d at 1465. (citing LaGrant v. Gulf and Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir.1984) ("The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination.")).
 
 
 16
 Here, Simon admits that he has no direct proof of age discrimination. See J.A. at 267 (testimony of Edward Simon conceding that nobody at NuTone ever told him or otherwise suggested that he was selected for discharge because of his age). Simon must therefore prove through indirect and statistical evidence that Nutone's downsizing was incidental to, and not the reason for, his discharge. See Chappell, 803 F.2d at 266.
 
 
 17
 Simon claims that his statistical and pattern evidence shows that Hoffman selected five of the six oldest employees under his supervision for termination. The facts presented at trial, however, do not support this conclusion because ages are unknown for one discharged employee (Scroggs), one transferred employee (Brown), and two retained employees (Smallwood and Ledford), see supra n. 1. It is thus impossible to determine by a preponderance of the evidence whether the retained employees were among the oldest or among the youngest.
 
 
 18
 In Chappell, a former employee who was 56 years old at the time of his layoff brought an ADEA suit against his former employer. At trial, plaintiff "offered 'demotion statistics' as evidence of a decrease in the average employee age" at the place of former employment. 803 F.2d at 268. "He claimed to have obtained his statistics from 'general observation' and the 'environment' (attendance at birthday parties and newspaper notices)." Id. This court held that
 
 
 19
 [T]he statistics ... [carried] no weight. If he wanted to introduce true statistical evidence, he could have obtained the company records during the course of discovery. Mere personal beliefs, conjecture, and speculation are insufficient to support an inference of age discrimination."
 
 
 20
 Id. Here, Simon's proffered conclusions would clearly require conjecture and speculation.
 
 
 21
 Moreover, with the exception of Waldo's testimony comparing Simon to Boehm, the record is void of evidence or testimony regarding the relative qualifications of those employees who were retained and/or transferred and the employees who were discharged. In reversing a jury verdict under similar circumstances in Simpson v. Midland-Ross Corp., 823 F.2d 937 (6th Cir.1987), this court noted that
 
 
 22
 For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.... Statistics such as those offered may be interesting perhaps, but are fundamentally irrelevant to an age discrimination claim. [The plaintiff] presented nothing that could bring his "cold numbers convincingly to life."
 
 
 23
 .............................................................
 
 
 24
 ...................
 
 
 25
 * * *
 
 
 26
 A mere scintilla of evidence will not suffice to support a jury verdict: in an ADEA case, "[t]here must be evidence of discriminatory purpose ... and there must be evidence from which a reasonable jury could conclude that age was the more likely reason for the employees discharge, rather than a mere speculative possibility.
 
 
 27
 Id. at 944. (internal citations omitted).
 
 
 28
 "A judgment notwithstanding the verdict may be granted only if, 'upon viewing the totality of the admissible evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion.' " Id. (citing Ridenour, 791 F.2d at 55). Here, Simon has failed to rebut NuTone's legitimate, nondiscriminatory reasons for his discharge or its legitimate reasons for retaining other employees. Under such circumstances, it was inappropriate for the lower court to deny NuTone's motion for a judgment notwithstanding the verdict. See id.
 
 IV.
 
 29
 Because we find that NuTone was entitled to a judgment as a matter of law, there is no reason for this court to address NuTone's second claim--that it is entitled to a new trial. The judgment against NuTone is hereby REVERSED and the damages award against it is VACATED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Hoffman supervised and selected for termination employees in both the Marketing and National Service Departments. As best we can gather from the trial transcripts and the exhibits attached thereto, the employees and their respective fates as a result of the reorganization and downsizing are as follows:
 Name: Age: Action:
MARKETING DEPARTMENT
Product Mgrs: Terry Boehm aprx. 43 retained
 Tony Cantanzaro aprx. 39 retained
 Sola Roberts aprx. 53 retained
 Chuck Wetzel aprx. 43 retained
Marketing Engnr: Ed Simon 64 discharged
Secretary: Barbara Haggard unknown retained
NATIONAL SERVICE DEPARTMENT
Field Serv. Mgrs: Paul Brown unknown offered transfer
 Dan Ledford 32 retained
 Paul Monas early 60's retired (not offered transfer)
 Fred Pfeiffer early 70's retired (not offered transfer)
 George Scroggs unknown discharged
 Dee Smallwood unknown retained
 Gary Spear aprx. 45 offered transfer
 Ray Trimm unknown retained
 Doug Waldo 57 discharged
 
 
 [3]
 Simon does not cross-appeal these adverse rulings
 
 
 [4]
 Prior to December 1, 1991, motions for judgment as a matter of law were known as motions for judgment notwithstanding the verdict (JNOV). Fed.R.Civ.P. 50. Here, NuTone captioned its motion, "Defendant's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Defendant's Motion for a New Trial." J.A. at 63
 
 
 [5]
 NuTone first argued that Simon failed to establish a prima facie case of age discrimination under the McDonnell Douglass/Barnes criteria. We disagree, but find it unnecessary to address this issue in light of our ultimate holding