14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Newman J. FINLEY, Plaintiff-Appellant,
v.
BAKER MATERIAL HANDLING CORPORATION, Defendant-Appellee.
 No. 92-4240.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1994.
 
 Before: JONES and SILER, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Newman J. Finley, Plaintiff-Appellant, appeals the summary judgment granted to Defendant-Appellee Baker Material Handling Corp. ("Baker") on age discrimination, breach of contract, and "retaliation" claims related to Finley's discharge from his job as a foreman for Baker. We affirm the summary judgment.
 
 
 2
 * Baker, an Ohio corporation, manufactures industrial lift trucks. A German company, Linde AG, acquired Baker in 1977. Due to the ownership change, Baker began producing components of its trucks in Germany and then importing them into Charleston, South Carolina, where Baker eventually moved its American plants and headquarters. During this process, Baker closed one of its Cleveland plants in 1985 and the other in 1990.
 
 
 3
 Finley began working for Baker as a welder in 1957 and became a foreman in 1979. After his discharge in 1982, Finley filed his first lawsuit against Baker, claiming age discrimination and wrongful discharge. The parties settled that suit, and Finley returned to Baker in 1985 as the production coordinator for one Cleveland facility. The settlement called for the "full reinstatement of all benefits." J.A. at 48.
 
 
 4
 Six months later, Finley was transferred to a job as a warehouse foreman, where he supervised two other employees. As Baker closed its Cleveland operations, it continually laid off workers and discharged Finley on November 23, 1987. Then sixty years old, he was one of twenty-seven workers laid off that year and one of sixteen on that day.
 
 
 5
 Finley filed this suit on October 25, 1989. His amended complaint claims that Baker discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-34 (1988). He also claimed violation of the Ohio counterpart to the ADEA, found in Ohio Revised Code sections 4101.17 and 4112.01-.99. Additionally, he claimed there had been "retaliatory discharge" due to his filing the earlier suit, as well as breach of contract and promissory estoppel because he did not receive severance benefits allegedly due, and intentional or negligent infliction of emotional distress.
 
 
 6
 On February 16, 1990, the district court dismissed the claims of intentional/negligent infliction of emotional distress because the plaintiff had not alleged sufficiently "extreme and outrageous" conduct. On September 25, 1992, the district court adopted a magistrate's report and recommendation and granted summary judgment to Baker on the remaining claims. With regard to the age discrimination claims, the court held that Finley had not shown a genuine issue of material fact with regard to Baker's motivation for firing him. Further, the court held that even if Finley had established a prima facie case of discrimination, Baker had nevertheless offered a legitimate and nondiscriminatory explanation for the discharge that was substantiated and unrefuted. With regard to the severance pay/breach of contract issue, the district court adopted the magistrate's reasoning finding the state law claims preempted by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq. Finally, the court noted that in his objections to the magistrate's report, Finley did not challenge the findings on the retaliation claim, and the court adopted the magistrate's reasoning that the claim was without merit.
 
 
 7
 Finley subsequently appealed to this court, challenging the summary judgment on the various issues. We review grants of summary judgment de novo. Rector v. General Motors Corp., 963 F.2d 144, 146 (6th Cir.1992). In summary judgment cases, the question on review is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986). Though inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986), the court need not make inferences that are implausible. Id. at 587; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir.1989).
 
 II
 
 8
 We conclude that the district court was correct in granting summary judgment on the ADEA claim, for Finley did not and apparently cannot satisfy his prima facie burden here.
 
 
 9
 In general, to state a prima facie case of discrimination under the ADEA, a plaintiff must establish the elements required by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as imported from the Title VII context. This means that the plaintiff must establish:
 
 
 10
 1) that he was a member of the protected class (i.e. over age 40);
 
 
 11
 2) that he was discharged;
 
 
 12
 3) that he was qualified for the position; and
 
 
 13
 4) that he was replaced by a younger person.
 
 
 14
 See Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982) (applying McDonnell Douglas in ADEA context).
 
 
 15
 However, this circuit does not apply McDonnell Douglas mechanically but instead uses it as a tool to achieve the ultimate objective of finding whether age was in fact a determining factor in the firing. See, e.g., Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 n. 9 (6th Cir.1990), cert. denied, 498 U.S. 878 (1990). As such, a variation of the four elements may be used in situations where the original requirements would be inappropriate. An example of such a situation is a work force reduction. When a dismissal is part of a general work force reduction at a company, a person cannot be expected to prove that he was replaced by a younger person (McDonnell Douglas 's fourth element), as he was presumably not replaced by anyone. Instead, as the reduction itself may be the reason for the dismissal, the plaintiff has the burden of presenting direct, circumstantial, or statistical evidence tending to indicate that the employer impermissibly discharged the plaintiff. As the court explained in Barnes:
 
 
 16
 When work force reductions by the employer are a factor in the decision, 'the most common legitimate reasons' for the discharge are the work force reductions. By showing the other elements of a McDonnell Douglas case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a prima facie case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.... Our conclusion would not change even if a plaintiff additionally demonstrated that younger persons were retained in other jobs which the plaintiff was qualified to perform. A different result would allow every person age 40-and-over to establish a prima facie case of age discrimination if he or she was discharged as part of a work force reduction.[1]
 
 
 17
 The situation in this case clearly is a genuine work force reduction, as Baker was closing its Cleveland plants, which by 1990 were both shut down. Sixteen workers were laid off on the same day as Finley.
 
 
 18
 It is undisputed that Finley satisfies the first three requirements of McDonnell Douglas as laid out above. However, though he does not have to meet the burden under the fourth prong, he cannot meet the additional burden placed upon work force reduction plaintiffs, as he does not credibly show "direct, circumstantial, or statistical evidence" indicating he was fired because of his age. Affidavits offered by the defendant established the many terminations that occurred at Baker, and demonstrated the qualifications, skills, and duties of others who were not discharged. J.A. at 140-49. In particular, the former vice president of Baker stated that budget cuts forced him to dismiss a production foreman, and that he made the decision to terminate Finley because his job was the least essential of the four foremen. J.A. at 140. Statements from the plant manager at that time are to the same effect. J.A. at 145. Most important, however, is the fact that two other younger foremen were discharged after Finley: Robert Glover was thirty-one when dismissed five months later and William Ward was forty-six when dismissed in 1990 (the fourth foreman voluntarily quit). J.A. at 151.
 
 
 19
 Finley offers mainly unsupported statements from his deposition that officials at Baker indicated they wanted to fire older workers, as well as a theory that Baker placed him in an expendable job so that he could easily be terminated. We believe that the theories Finley offers are extremely speculative and thus do not create a genuine issue of fact for trial, in light of his extra burden due to the apparently legitimate work force reductions. While we must make inferences from the facts alleged in favor of Finley, we are not required to make inferences that are implausible. Street, 886 F.2d at 1480.
 
 III
 
 20
 Finley also claims that Baker fired him in retaliation for his bringing his first ADEA discrimination suit. To do so would be illegal under the ADEA, which states that an employer cannot discriminate against an employee who has made a charge under the Act. See 29 U.S.C. Sec. 623(d) (1988). The magistrate recommended summary judgment on this claim, and Finley did not object to that recommendation before the district court. Finley has thus waived his right to appeal the claim, and it is not properly before this court to decide. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir.1991); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir.1986); Thomas v. Arn, 474 U.S. 140, 147-48 (1985) (upholding Sixth Circuit rule requiring waiver).
 
 
 21
 Even if we decided the retaliation claim on the merits, analysis of the claim would also follow the McDonnell Douglas framework. See Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.) (per curiam) (following McDonnell Douglas and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981), in retaliatory discharge context), cert. denied, 498 U.S. 984 (1990). Ultimately, Finley must show that the firing would not have occurred "but for" the earlier ADEA claim he filed. See Canitia, 903 F.2d at 1068. However, as stated earlier, Finley cannot overcome the very strong evidence offered by Baker that he was dismissed due to a reduction in their work force.
 
 IV
 
 22
 For nearly the entire time that Finley worked for Baker, the company had a policy that provided to an employee an amount equal to one week's pay for each year of work when the employee left Baker for any reason, including involuntary dismissal. Several weeks before Finley's termination, Baker changed its policy to one that offered reduced benefits under ERISA. Under the new policy, employees received severance pay on a sliding schedule based on their length of employment, but the maximum could be eight weeks of pay for employees who had worked over 20 years. A letter to employees outlined the severance pay policy and stated that the new policy was to supersede any previous one. J.A. at 154. Finley claims that, under state law, Baker breached its contract with him when it paid him benefits under the new policy, or alternatively that Baker was estopped from paying the lower benefits by its earlier promises upon which Finley detrimentally relied.
 
 
 23
 Baker's severance pay plan qualifies as a welfare benefit plan under ERISA. See Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 551 (6th Cir.1989) (changed severance pay policy is a plan subject to ERISA even where employees not informed of changes); Adams v. Avondale Industries, Inc., 905 F.2d 943, 949 (6th Cir.) (severance policy is properly amendable under ERISA where original plan did not reserve right to amend), cert. denied, 498 U.S. 984 (1990). Finley's state law claims of breach of contract and promissory estoppel are thus preempted under ERISA's broad sweep. See Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275-76 (6th Cir.1991) (ERISA preempts both state contract and promissory estoppel claims), cert. dismissed, 113 S.Ct. 2 (1992); Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir.), cert. denied, 488 U.S. 826 (1988) (same). Summary judgment thus was correctly granted for the defendants on the state law claims.
 
 
 24
 Finley finally asserts that Baker breached the 1985 agreement that settled his first age discrimination claim by not awarding him the severance pay. In addition to his return to employment that agreement promised Finley "full restatement of all benefits." J.A. at 48. Finley presumably did have the severance pay benefit when he returned to work in 1985. However, in promising to reinstate the benefits, Baker does not promise to "freeze" the benefit policies as they were. Since the 1987 change in the severance pay benefits was a legal one under ERISA that affected all similar employees and not just Finley, the new policy does not constitute a breach of the settlement agreement.
 
 V
 
 25
 For the reasons stated, we AFFIRM the district court's grant of summary judgment to the defendant.
 
 
 
 [1]
 See also Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 517 (6th Cir.1991) ("a plaintiff whose employment position is eliminated in a corporation reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons"); Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir.1987) (same); Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986) (same)